UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
09-CV-3730(JMR/JJK)


Nu-Life Products, Inc.            )
                                  )
    v.                            )            ORDER
                                  )
Douglas A. Henricksen et al.      )


Interreligious disputes are always hotly contested.  This case suggests disputes among those serving the religious are no less contentious.

This particular set-to concerns devices designed to dispense large numbers of communion wafers.  It arose after plaintiff, Nu-Life Products, Inc., hired defendant Douglas Henricksen to assist in the development and sale of its communion products.  The match was not made in heaven.  After about two years, the parties' business relationship soured.

Plaintiff accuses Henricksen of creating a rival line of communion products in violation of his employment contract.  The matter is before the Court on cross-motions. Defendants move to dismiss or stay this case pending arbitration; plaintiff seeks partial summary judgment.  Defendants' motion is granted; plaintiff's motion is dismissed as moot.

I.  Background

The "facts" are taken from the parties' pleadings and affidavits.

Plaintiff, a Minnesota corporation located in West St. Paul, manufactures communion wafer dispensers. Its "germ-free" dispensers are designed to deliver as many as 400 communion wafers without a refill. (Compl. ¶ 7.) In August, 2006, plaintiff hired Douglas Henricksen, a Wisconsin citizen, to help develop and market its products. (Compl. ¶ 10.) Henricksen subsequently became a company shareholder and an officer and director.

As a condition of employment, Henricksen signed a confidentiality, non-compete, and non-circumvention employment agreement ("the Employment Agreement").[1] (Compl. ¶ 10.) The Employment Agreement applied to "all rights and privileges associated with" plaintiff's wafer dispenser. (Henricksen Decl., Ex. 1.) By signing the Employment Agreement, Henricksen pledged he would not compete with plaintiff; would maintain confidentiality regarding plaintiff's products; and would refrain from circumventing plaintiff's business. The Employment Agreement further provided that "any controversy or claim arising out of or relating to this agreement shall be brought in binding arbitration," and "the specific enforcement of [the] agreement through an injunction or restraining order issued by an appropriate court." (Id.)

---

[1] The original Employment Agreement was with Global Products and Services, LLC, "founders of Nu-Life Products." (Compl. ¶ 10.) Both parties, however, represent the Employment Agreement's terms may be enforced by Nu-Life Products, Inc., Global Products' successor-in-interest. (Compl. ¶¶ 32, 43, 45.)

The parties also executed a separate shareholder agreement "setting the terms for management and distributions from the Corporation." (Henricksen Decl., Ex. 2.) The shareholder agreement stated that disputes among shareholders would first be sent to mediation, then binding arbitration.

After leaving plaintiff's employment, Henricksen aligned himself with co-defendant, Nu-Life Church Supplies, Inc., a Wisconsin corporation. Henricksen is an officer, director, agent, employee, principal and/or owner of Nu-Life Church Supplies, Inc. (Compl. ¶ 3.) Plaintiff contends defendants are working together to market and sell a competing line of communion wafer dispensers, in violation of Henricksen's Employment Agreement with Nu-Life Products.

Plaintiff also claims that "after discovering Henricksen's breach of fiduciary duties," it demanded he immediately cease and desist his illicit activities. (Compl. ¶ 34.) Henricksen allegedly promised plaintiff he would dissolve the new company. (Compl. ¶ 37.) On September 10, 2009, Henricksen sent plaintiff's attorney an affidavit setting forth his resignation and his offer to sell back the 290 shares of stock he held for $1.00. (Compl. ¶ 39.) Plaintiff accepted the offer and sent Henricksen a $1.00 cashier's check. As of April 2, 2010, however, plaintiff claimed Henricksen failed to execute the stock transfer statements while

continuing to work with Nu-Life Church Supplies.[2]

On December 30, 2009, plaintiff filed this lawsuit against defendants claiming Henricksen breached the Employment Agreement and fiduciary duties, and misappropriated plaintiff's trade secrets. Plaintiff additionally claims both defendants tortuously interfered with its business relationships and prospective business advantage; misappropriated plaintiff's trade secrets and confidential information; and are liable for conversion and unjust enrichment. Plaintiff seeks damages, injunctive relief, and the return of business documents.    On February 1, 2010, defendants responded by filing a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend this matter should be stayed or dismissed pending arbitration, because plaintiff's claims are covered by arbitration clauses of the employment contracts. Plaintiff opposes defendant's motion.

On April 2, 2010, the Court held a hearing addressing these matters and indicated it would compel arbitration and issue the Order set forth herein.

II. <u>Analysis</u>

Arbitration questions are considered in light of the Federal

---

[2] The Court has been advised, subsequent to the hearing on these motions, that the stock transfers have been accomplished. Therefore, those issues are no longer before the Court, and are not considered herein.

Arbitration Act.  Under that Act, arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity."  9 U.S.C. § 2.  When reviewing an arbitration clause, the Court asks "whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement." Bailey v. Ameriquest Mortgage Co., 346 F.3d 821, 822 (8th Cir. 2003).  Here, plaintiff admits the arbitration clauses of the parties' contracts are valid, but denies they apply to its claims. Accordingly, the Court examines whether plaintiff's claims fall within the ambit of either arbitration clause.

    A.  <u>The Employment Agreement</u>

"In conducting an inquiry into whether claims come within the arbitration clause, the district court does not reach the potential merits of any claim but construes the clause liberally, resolving any doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) (quotations omitted).  This "liberal federal policy favoring arbitration agreements" compels arbitration where the underlying dispute "touch[es] matters covered by" the arbitration provision.  Id. (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

Applying these principles, the Court finds plaintiff's claims arbitrable in light of the Employment Agreement's broad terms requiring arbitration of "any controversy or claim arising out of or relating to [the] agreement." (Henricksen Decl., Ex. 1.) Plaintiff's equitable, tort, and statutory claims all arise from the claimed misappropriation of product information and trade secrets, and the asserted intentional interference with plaintiff's business contacts by defendant.   Each topic is encompassed by the Employment Agreement.   Further, plaintiff's complaint, as it touches the breach of contract claim, avers "plaintiff has been injured as a direct result of Henricksen's breach of the confidentiality, non-compete, and non-circumvention agreement."[3] (Compl. ¶ 46.)   For these reasons, the Court finds these claims clearly "arise out of or relate to" the parties' employment relationship.   Where the Employment Agreement plainly requires arbitration for all plaintiff's claims, the Court need not address whether those claims are also covered by the parties' shareholder agreement.

Plaintiff, however, offers a fallback argument.   It claims that, even if the Court finds some claims arbitrable, the parties intentionally excluded injunctive relief from arbitration. Plaintiff emphasizes Employment Agreement language permitting

---

[3] Plaintiff initially filed a claim for specific performance against defendants (Count X) in regard to the stock certificates. As noted in fn2, this question is resolved.

"specific enforcement of this agreement through an injunction or restraining order issued by an appropriate court." (Henricksen Decl., Ex. 1.)

The Employment Agreement's language does allow an appropriate court to issue an equitable decree, but it contains absolutely no bar to another entity from doing the same. As such, an arbitral body may issue any necessary injunctive relief. Compare with Simitar Entm't, Inc. v. Silva Entm't, Inc., 44 F. Supp. 2d 986, 989 (D. Minn. 1999) (finding parties intended to exclude injunctive relief from arbitration where contract expressly stated "no disputant shall be required to seek arbitration regarding . . . injunctive relief"). Where, as here, the parties agreed to arbitrate disputes "arising out of or relating to" their employment agreement, the Court takes them at their word.

B.  Nonsignatory Applicability

As a last defense against arbitration, plaintiff claims even if Henricksen can compel arbitration, nonsignatory Nu-Life Church Supplies may not enforce arbitration. Plaintiff emphasizes it has no agreement with Nu-Life Church Supplies, and thus, "cannot be required to arbitrate any of its claims against Nu-Life Supplies." (Pl.'s Mem. Opp. Dismiss. 8-9.) The Court again disagrees.

A nonsignatory may force a signatory into arbitration when "the relationship of the persons, wrongs and issues involved is a close one." CD Partners, LLC v. Grizzle, 424 F.3d 795, 799 (8th

7

Cir. 2005); see also Thomson v. Am. Arbitration Assoc., 64 F.3d 773, 779 (2d. Cir. 1995) (Signatory may not avoid arbitration with nonsignatory when disputed claims are "intertwined" with the arbitration agreement).  For example, in CD Partners, the Eighth Circuit Court of Appeals reviewed an arbitration agreement between two companies, C.D. Warehouse and C.D. Partners.  424 F.3d at 798. The Court permitted C.D. Warehouse officers to compel arbitration with C.D. Partners where the nonsignatory officers had a close relationship with signatory C.D. Warehouse.  Id.

This is precisely the situation here.  Plaintiff, a signatory, seeks to avoid arbitration with nonsignatory Nu-Life Church Supplies.  Plaintiff's claims against Nu-Life Church Supplies directly arise from its relationship with signatory Henricksen - the officer, director, agent, employee, principal and/or owner of Nu-Life Church Supplies.  (Compl. ¶ 3.)   Accordingly, the Court concludes that relationship is sufficiently close, so that both defendants may invoke arbitration.

III. Conclusion

Where the entire controversy between the parties is subject to arbitration, the Court dismisses plaintiff's claims without prejudice.  See Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

8

Accordingly, IT IS ORDERED THAT:

1.  Defendants' motion [Docket No. 4] to compel arbitration is granted;

2.  Plaintiff's claims are dismissed without prejudice; and

3.  Plaintiff's motion for partial summary judgment, [Docket No. 14], and defendants' motions to stay plaintiff's motion and file an additional reply [Docket Nos. 20 & 21] are dismissed as moot.

Dated:  May 28, 2010


                        s/ James M. Rosenbaum
                        JAMES M. ROSENBAUM
                        United States District Judge